UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

     v.                           CASE NO. 6:19-cr-219-Orl-37DCI

TODD JOSEPH SIMMERMAN

### <u>UNITED STATES' SENTENCING MEMORANDUM</u>

The United States of America, by Maria Chapa Lopez, United States Attorney, files its sentencing memorandum and requests the Court to sentence the defendant to the high end of the sentencing guidelines. This sentence will achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a) because it will reflect the seriousness of the offense and the characteristics of the defendant, and it will promote respect for the law, provide just punishment, afford adequate deterrence and, most importantly, protect children from further crimes of the defendant.

### <u>BACKGROUND</u>

In 2012, the defendant, Todd Joseph Simmerman, traveled to meet a child he thought was 13 years-old, to have sex. PSR at ¶ 97. Following his conviction in state court for this offense, the court ordered the defendant to register as a sex offender in Florida, and to comply with conditions of probation after his release from state prison. *Id.* Nine months after his release

from prison, the defendant violated his conditions of state probation. *Id.* The court ordered the defendant to serve two years of community control, which terminated on June 23, 2018. *Id.*

Six months later, in or about December 2018, the defendant hired MV1 who had recently turned 15-years-old, to babysit his children at his computer and phone repair store. *Id.* at ¶ 18. During the next five months, the defendant enticed and persuaded MV1 to engage in sexually explicit activity, preying on her inexperience and vulnerability. *Id.* at ¶¶ 18, 33-47. The defendant recorded several of these abusive encounters using his Samsung Galaxy Note 8 smartphone, a device that he did not report on his sex offender registration forms. *Id.* at ¶¶ 18, 20-21, 26. Despicably, the defendant told MV1 to call him "daddy," and arranged for her to have sex with other men while he watched. *Id.* at ¶¶ 24, 26-27, 43, 47. The defendant told MV1 to lie about her age, and distributed sexually explicit images of her to persuade these men to have sex with her. *Id.* at ¶¶ 23-25, 47.

During this time, MV1 introduced the defendant to her friend, MV2, who was also 15 years-old. *Id.* at ¶¶ 20-22, 48. Through snapchat communications, the defendant persuaded MV2 to send him naked pictures. *Id.* at ¶ 48-49. Eventually, he persuaded MV2 to engage in sexual activity and recorded it using his unregistered Samsung Phone. *Id.* at ¶¶ 20-22, 48-49. The

2

defendant tried to convince MV2 to allow him to produce sexually explicit images of her and sell them on the Internet, but she declined and stopped communicating with him in April 2019. *Id.* at ¶ 48.

At about this same time, in April 2019, the Brevard County Sheriff's Office began a sexual battery investigation involving MV1 and the defendant. *Id.* at ¶16. MV1 notified the defendant that police had asked her about their relationship and that she denied the existence of the relationship. Undeterred, the defendant continued to prey upon MV1. In May 2019, the defendant recorded MV1 engaging in sexually explicit conduct. *Id.* at ¶ 26. He also attempted to sexually traffic MV1 to other men. *Id.* at ¶¶ 24, 27.

On May 30, 2019, the Brevard County Sheriff's Office arrested the defendant for failing to register his cell phone on his sex offender registration forms in violation of F.S. § 943.0435(4)(e)(2) and seized his Samsung Galaxy Note 8 smartphone. *Id.* at ¶ 19. The next day, during jail calls, the defendant learned from his wife that the officers were obtaining a search warrant for the phone. *Id.* at ¶ 30. The defendant repeatedly told his wife to "check out" the find my device app, which is an app that enables a user to remotely find, lock and erase data on a Samsung device. *Id.* at ¶¶ 29-31. Later, the defendant's wife advised that she was unable to load the app on her phone. *Id.* at ¶ 31.

Subsequently, agents obtained a state search warrant for the phone, and

located sexually explicit images and text communications involving MV1 and MV2. *Id.* at ¶ 19; Doc. 1. On September 1, 2019, federal law enforcement charged the defendant in a criminal complaint, doc. 1, and on October 9, 2019, a grand jury returned an indictment charging the defendant with seven counts of child sexual exploitation offenses. Doc. 11.

On January 27, 2020, the defendant pleaded guilty to two counts of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a) (counts three and four), and one count of committing these offenses as a registered sex offender, in violation of 18 U.S.C. § 2260A (count seven), pursuant to a plea agreement. Docs. 39, 42. He faces a statutory sentence of a mandatory minimum of 15 years to 30 years in prison on both counts three and four, and a mandatory consecutive term of imprisonment of ten years on count seven. Pursuant to the PSR, the defendants' guideline sentence is 360 months to 720 months, plus a statutory consecutive sentence of 10 years for count seven. PSR at ¶¶ 137-139.

## ARGUMENT

I.    **Guidelines Objections**

A.    Obstruction of Justice, U.S.S.G. § 3C1.1

The Probation Office properly applied the obstruction of justice enhancement under U.S.S.G. § 3C1.1. *See* PSR at ¶¶ 64, 72, 81.

Pursuant to § 3C1.1, the district court must increase the defendant's offense level by two levels, if "the defendant willfully … attempted to obstruct or impede, the administration of justice with respect to the investigation … of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct." The commentary provides that, "obstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered … if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." U.S.S.G. § 3C1.1 cmt. (n.1). *See also*, *United States v. Wayerski*, 624 F.3d 1342, 1352 (11th Cir. 2010)(a defendant's affirmative steps to prevent law enforcement from detecting illicit activity and to impede any investigation may qualify as obstruction under § 3C1.1).

As set forth in the PSR, while in custody for his state registration offense, the defendant repeatedly solicited his wife to install the find my device app on her phone after learning that authorities were seeking a search warrant for his seized Samsung phone. PSR at ¶¶ 29-31. Initially, the defendant told her, "Hey, you remember that find my device app … you should check it out … no you know what I mean … like the options." *Id.* at ¶30. At the end of the call, the defendant said, "you should check out that app after we get off the

phone. … No I really mean it." *Id.* Later, during another call, the defendant asked his wife, "did you check out that app I told you about," and his wife replied that she could not get the app to load on her phone. *Id.*

The find my device app enables users to remotely wipe data from a phone. The defendant knew that the evidence of his offenses was on the phone, and his instructions to his wife to install the app was a willful attempt to destroy that evidence. *See* U.S.S.G. § 3C1.1 cmt. (n.4(D))(procuring others to destroy evidence that is material to an investigation constitutes obstructive conduct. ). Accordingly, the Probation Office properly applied this adjustment.

B.   Use of a Computer, U.S.S.G. § 2G2.1(6)

Likewise, the Probation Officer properly scored the defendant for using a computer to entice and solicit a minor to participate in sexually explicit conduct. *See* U.S.S.G § 2G2.1(6); PSR at ¶¶ 61, 69. As set forth in the PSR, the defendant used his Samsung phone to commit all aspects of the offenses, including communicating directly with the minors to persuade them to engage in sexual activity and to arrange their travel for that purpose. PSR at ¶¶ 20, 23-24, 27, 34, 36, 48,

In addition, the Samsung phone is a "computer" under the sentencing guidelines. Pursuant to the guidelines commentary, a computer "has the

meaning given that term in 18 U.S.C. § 1030(e)(1)." U.S.S.G. § 2G2.1(6) cmt.(n. 1.). A cellphone is a computer under § 1030(e)(1). *United States v. Mathis*, 767 F.3d 1264, 1283 (11th Cir. 2014)("We therefore hold that a defendant's use of a cellphone to call and send text messages constitutes use of a computer as that term is defined in 18 U.S.C. § 1030(e)(1) … .").

II.    **Sentencing Recommendation**

For the reasons set forth below, the United States requests the Court to impose a sentence of imprisonment at the high-end of the guidelines range on counts three and four, and a consecutive sentence of 10 years on count seven. This sentence is reasonable and reflects the sentencing factors under 18 U.S.C. § 3553(a).

1.    <u>The Nature and Circumstances of the Offense</u>

The nature and circumstances of the defendant's criminal conduct is heinous and militates in favor of a high-end guidelines sentence. *See* 18 U.S.C. § 3553(a)(1). The defendant, a registered sex-offender, repeatedly sexually exploited two vulnerable 15 year-old girls and recorded the abuse. He persuaded one of his young victims to have sex with other adult men for his perverted pleasure, and he tried to convince his other young victim to produce sexually explicit images for a profit. Not only did the defendant inflict emotional harm on his victims, but he also exposed them to a sexually

transmitted disease. *See* PSR at ¶ 118. His conduct was beyond the norms of human decency.

"Child sex crimes are among the most egregious and despicable of societal and criminal offenses." *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009)(court affirmed as reasonable a 100-year-sentence for a first offender who sexually abused a 13-year-old girl and photographed the abuse). The Supreme Court has long recognized that childhood sexual abuse has devastating and long-lasting effects on its victims. *See New York v. Ferber*, 458 U.S. 747, 758 n. 9 (1982)("It has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults.").

Congress and the courts have recognized that the defendant's crimes are serious, and a high-end sentence reflects the serious nature of the defendant's offenses. 18 U.S.C. § 3553(a)(2).

2.   The History and Characteristics of the Defendant

Similarly, the defendant's history and characteristics weigh in favor of a high-end guidelines sentence. 18 U.S.C. § 3553(a)(1). The aim of this factor is to distinguish among defendants who commit a particular offense or type of offense. *United States v. Irey*, 612 F.3d 1160, 1203 (11th Cir. 2010).

The defendant's criminal history and characteristics are poor. He is a sexual predator and a danger to children. Although he is only thirty years-old, the defendant is a repeat child sexual offender. Rather than learn from his previous sex offense conviction and comply with the law, the defendant concealed his phone from authorities on his sex offender registration forms, and used that device to prey on, and sexually exploit, his victims. Moreover, he tried to involve his wife in the destruction of the evidence on his phone. Although the defendant is a father, he showed no empathy for the victims, and instead exploited them and exposed them to a sexually transmitted disease.

The defendant has had the benefit of two years of sex offender treatment, and the assistance of the state probation office. Despite that intervention, the defendant's criminal conduct escalated, and he victimized two adolescent children. The defendant's history and characteristics weigh in favor of a high-end guidelines sentence.

3.    Just Punishment, Adequate Deterrence, Respect for the Law, and Protection of the Public

The defendant's history and conduct in this case also show that a substantial sentence is needed to provide just punishment, promote respect for the law, provide adequate deterrence and protect children.

The defendant has no respect for the law. In 2010, when authorities arrested him for domestic violence, the defendant violated the terms of his pre-

trial release. PSR at ¶ 96. In 2015, when authorities released him from state prison, he violated the conditions of his probation. *Id.* at ¶ 97. In 2019, he failed to register his phone with authorities on his sexual offender registration forms. *See Id.* at ¶ 19. And, in 2019, when he learned that authorities were attempting to obtain a search warrant for that phone, he solicited his wife to remotely wipe the data from the phone. *Id.* at ¶¶ 51-52.

Likewise, the need for deterrence in this case is strong. Despite serving two years in prison and over three years of probation for a child sex offense, the defendant committed these heinous offenses just five months after completing his state probation. *Id.* at ¶ 97. Generally, deterrence is a weighty factor in child sex crimes, and even more so in this case. "The more serious the crime and the greater the defendant's role in it, the more important it is to send a strong and clear message that will deter others." *Irey*, 612 F.3d at 1212.

Finally, and most importantly, the defendant has demonstrated that he is a danger to children. Despite serving several years in prison for a child sex offense, and undergoing sex offender treatment, the defendant sexually and emotionally victimized two children. The defendant's criminal history and the depravity of his conduct in this case shows that he is an extreme danger to children. A substantial sentence is warranted.

For the foregoing reasons, the United States respectfully requests the

10

Court to sentence the defendant to a sentence at the high end of the guidelines plus a consecutive term of 10 years for count seven. A high-end sentence reflects the serious nature of the offense and the defendant's personal characteristics. It also adequately protects children, provides just punishment, affords adequate deterrence and promotes respect for the law.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney


By:     */s/ Karen L. Gable*
        Karen L. Gable
        Assistant United States Attorney
        USA No. 025
        400 W. Washington Street, Suite 3100
        Orlando, Florida 32801
        Telephone:   (407) 648-7500
        Facsimile:   (407) 648-7643
        E-mail:      karen.gable@usdoj.gov

11

**U.S. v. TODD SIMMERMAN**          **Case No. 6:19-cr-219-Orl-37DCI**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 8, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Charles E. Taylor, Jr., Esq.

*/s/ Karen L. Gable*
Karen L. Gable
Assistant United States Attorney
USA No. 025
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:   (407) 648-7500
Facsimile:    (407) 648-7643
E-mail:        karen.gable@usdoj.gov